IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


DIANA PAYNE                                              PLAINTIFF


        v.                  Civil No. 04-2189


THE UNIVERSITY OF ARKANSAS
FORT SMITH BY AND THROUGH THE
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS; JOEL
STUBBLEFIELD, UAFS CHANCELLOR,
in his official and personal
capacities; and SANDI SANDERS,
UAFS SENIOR VICE CHANCELLOR
AND CHIEF OF STAFF, in her
personal capacity                                       DEFENDANTS


### MEMORANDUM OPINION & ORDER

Now on this 26th day of July, 2006, there comes on for
consideration Defendants' Motion for Summary Judgment and
supporting documents (Docs. 32-34) and Plaintiff's Response and
Supplement (Docs. 42-44).

In determining whether summary judgment is appropriate, the
Court must view the facts and inferences in the light most
favorable to the non-moving party. *See Rabushka v. Crane Co.*,
122 F.3d 559 (8th Cir. 1997). The moving party bears the burden
of establishing the absence of issues of material fact in the
record and of establishing that it is entitled to judgment as a
matter of law. *See* Fed. R. Civ. P. 56(); *Celotex Corp. v.
Catrett*, 477 U.S. 316 (1986). To defeat a properly supported
motion for summary judgment, the nonmoving party must go beyond

the pleadings and designate specific facts showing a genuine issue of material fact for trial. *Id*. at 324. Thus, the "basic inquiry" for purposes of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir. 1996)(citation omitted). Further, the Court is mindful that the Eighth Circuit has repeatedly recognized that summary judgment should be used sparingly in employment cases. *E.g., Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995).

Plaintiff filed her First Amended Complaint on January 21, 2005. (Doc. 11). Plaintiff alleges gender discrimination in violation of Title VII (42 U.S.C. § 2000e, et seq.) and the Equal Pay Act (EPA); sexual harassment in violation of Title VII; retaliation in violation of Title VII and the First Amendment; and violations of her right to procedural and substantive due process under the Fourteenth Amendment. In her response to Defendants' summary judgment motion, Plaintiff states that she is no longer pursuing a claim for sexual harassment. Accordingly, that claim is DISMISSED WITH PREJUDICE. Defendants move for summary judgment on Plaintiff's remaining claims.

Initially, as set forth in Plaintiff's Response, Defendants

2

AO72A
(Rev. 8/82)

bear the initial burden of informing the court the basis for its motion, and identifying the portions of the record that establish the absence of genuine issues of material fact. Defendants' Motion, Brief and Statement of Undisputed Material Facts do not address the issues as directly as they should. The Court has attempted with some difficulty to sort through the voluminous materials submitted in support of Defendants' Motion in an effort to determine whether summary judgment is appropriate.

## Background

Diana Payne was employed at the University of Arkansas - Fort Smith (UAFS) or its predecessor, Westark College, from 1981 until January 3, 2005, when she was terminated. Ms. Payne received a grant of tenure in 1986.

Joel Stubblefield was hired by Westark College in 1980, as Dean of Business Affairs. He was named president of the school in October 1983, and later became Chancellor. From October 1983 until his untimely death in October, 2005, he was the administrative head of the school.

Sandi Sanders was employed by UAFS in 1979. After a series of promotions, Sanders became Provost in 1998. In 2004, she was promoted to Senior Vice Chancellor and Chief of Staff. She also served as the Interim Chancellor following Stubblefield's death.

After merging into the University of Arkansas system, an

3

Initial Rank Review team was created for the purpose of recommending the rank to be assigned to each faculty member. The team recommended that the plaintiff be awarded an Initial Rank Assignment of Assistant Professor. (Doc. 32, Ex. E-6A). On May 6, 2002, Sanders notified Plaintiff that she intended to recommend to Chancellor Stubblefield that her initial rank be Instructor, a lower rank than that of Assistant Professor. (Doc. 32, Ex. E-6A). On June 6, 2002, Stubblefield notified Plaintiff that she would receive the rank of Instructor. Plaintiff's subsequent appeals to Sanders and Stubblefield were denied. (Doc. 32, Exs. E & I).

In November of 2002, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging gender discrimination in connection with her pay and rank, hostile work environment and retaliation. (Doc. 32, Ex. A). On February 25, 2004, the EEOC issued its determination finding no evidence of wage discrimination or hostile work environment. *Id*. However, the EEOC found evidence indicating that UAFS retaliated against Plaintiff for filing her EEOC charge. *Id*. In a letter dated August 5, 2004, Plaintiff's counsel notified UAFS that she intended to file a lawsuit based upon the issues set forth in her EEOC charge. Plaintiff filed her initial complaint on August 17, 2004.

In August 2004, Plaintiff applied for a promotion to

4

Assistant Professor.  In connection with this application, Ms.

Payne was accused of plagiarism by the College of Business

Promotion Committee consisting of two faculty members.  (Doc.

32, Ex. D-K).  An Ad Hoc Committee conducted a hearing to

determine whether the plagiarism allegation could be

substantiated.  On November 18, 2004, the Ad Hoc Committee found

Plaintiff committed plagiarism by "fail[ing] to cite copyrighted

material on the Internet and in faulty paraphrasing", but only

recommended that Plaintiff be suspended through the Spring

semester 2005.  (Doc. 32, Exs. H-11 & 13).  On December 15,

2004, Stubblefield issued his preliminary decision stating his

intent to terminate Plaintiff.  (Doc. 32, Ex. H-15).  One member

of the Ad Hoc Committee responded urging Stubblefield to adopt

the Committee's recommendation of suspension further stating his

opinion that "Ms. Payne's mistakes were far more the result of

ignorance on her part regarding standards of academic writing

and scholarly activity and misinterpretation of the concept of

common knowledge than the result of a willful intent to

deceive."  (Doc. 32, H-17).  Plaintiff also responded.  (Doc.

32,Ex. H-16).  On January 3, 2005, Stubblefield terminated

Plaintiff.  (Doc. 32, Ex. H-19).

**Gender Discrimination (Title VII and the Equal Pay Act)**

Plaintiff contends that she was paid less than similarly

situated male employees in violation of Title VII and the Equal

5

Pay Act. To evaluate a claim for unequal pay for equal work on the basis of gender, a court uses the same standard without regard to whether the plaintiff raises the claim under Title VII or the EPA. *See Buettner v. Arch Coal Sales Co.*, 216 F.3d 707 (8th Cir. 2000). To establish a prima facie case of wage discrimination, Plaintiff must show that she was paid less than male employees for equal work in jobs that required equal skill, effort, and responsibility, and that were performed under similar conditions. *Id*. at 719. To be considered equal, jobs need not be identical; substantial equality suffices. *See Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021 (8th Cir. 2002). "Whether two jobs are substantially equal 'requires a practical judgment on the basis of all the facts and circumstances of a particular case,' including factors such as level of experience, training, education, ability, effort, and responsibility." *Hunt* at 1030 *(quoting Buettner*, 216 F.3d at 719). Differences in job titles or classifications are not dispositive. *Id*. at 1029. Plaintiff presented sufficient evidence to establish that she was paid less than Jerry Peerbolte and Robert Sell for work that a jury could conclude was substantially equal. (Doc. 42, pp. 17-19). Taking all facts presented in the light most favorable to Plaintiff, as the Court must do, the Court finds there are genuine issues of material fact, including but not limited to, whether Plaintiff was paid less than similarly situated male

6

employees and whether Defendants' proffered reasons for the differences in pay are merely pretext for gender discrimination.

## **Retaliation (Title VII)**

To prevail on a retaliation claim, Plaintiff must prove that : (1) she engaged in a protected activity; (2) that the employer took an adverse employment action against her; and (3) that the two situations are causally connected. *See Okruhlik v. Univ. of Arkansas*, 395 F.3d 872 (8th Cir. 2005)(citations omitted). Plaintiff contends that she was terminated in retaliation for filing her initial EEOC charge, as well as this lawsuit. Defendants contend that Plaintiff cannot show any causal relationship between either event and her termination. However, Plaintiff has presented evidence of alleged comments by Stubblefield that could be considered as a retaliatory motive. After taking all facts presented in the light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact, including but not limited to, whether Plaintiff's termination was causally connected to the filing of her initial EEOC charge and/or this lawsuit and whether Defendants' proffered reasons are merely pretextual.

## **First Amendment Retaliation (18 U.S.C. § 1983)**

Plaintiff contends that Stubblefield and Sanders retaliated against her for criticizing a University policy by assigning her a lesser rank of Instructor, rather than Assistant Professor.

7

Public employees have a First Amendment right to speak freely on matters of public concern. *Rankin v. McPherson*, 483 U.S. 378 (1987). This protection only extends to speech regarding matters of public concern, and must be balanced against the efficient operation of the workplace. *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). At the same time, the Government has an interest in regulating the speech of its employees to promote "efficiency and integrity in the discharge of official duties, and [in maintaining] proper discipline in the public service." *Connick*, 461 U.S. at 150-51. These interests must be balanced against the employee's interest in addressing matters of public concern and enabling the electorate to make informed decisions. *Pickering*, 391 U.S. at 572.

Under the *Pickering* analysis, a public employee must establish three elements to state a retaliation claim under the First Amendment: (1) that the speech involved a matter of public concern; (2) that his or her interest in the speech outweighed the government employer's countervailing interest in providing efficient and effective services to the public; and (3) that the speech was a substantial or motivating factor in the alleged retaliatory action. *See Shands v. City of Kennett,* 993 F.2d 1337 (8th Cir. 1993); *Mt. Healthy City School Dist. Bd. Of Ed. v. Doyle*, 429 U.S. 274 (1977). As a defense, the employer may show

8

that it would have taken the adverse action even if the employee had not engaged in protected conduct. *See Shands, supra*. The employer's defense and the third factor are questions of fact; however, the first two factors are questions of law. *See Kincade v. City of Blue Springs*, 64 F.3d 389 (8th Cir. 1995).

The United States Supreme Court recently held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006). The Court found that "Government employers, like private employers, need a significant degree of control over their employees' words and actions [,]" and therefore, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id.* at 1958. Accordingly, courts have an additional consideration when reviewing a First Amendment retaliation claim under the *Pickering* analysis. If the alleged protected speech involves a matter of public concern, the court must next determine if the employee was speaking as part of his or her official duties or instead as a citizen. *Id.* If the former, the speech is not protected under the First Amendment. If the latter, the Court must determine whether the employee's interest in the speech outweighs the government's

9

countervailing interest in providing efficient and effective services to the public.

In determining whether an employee's speech addresses matters of public concern, courts must review the content, form, and context of the speech. *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882 (3d Cir. 1997). A public employee's speech involves a matter of public concern if it can " 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id*. at 886 (*quoting Connick v. Myers*, 461 U.S. 138 (1983). Plaintiff's motives do not negate the import of the content of the statements. "The private nature of the statement does not ... vitiate the status of the statement as addressing a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378 (1987).

The speech at issue here is an email from Plaintiff to Sanders regarding a new policy that increased the minimum number of hours that faculty members, including Plaintiff, were expected to be present on campus. (Doc. 32, Ex. E-2). In the email, Plaintiff expresses her understanding that she could fulfill this requirement by working in places other than physically being on campus. *Id*. While Plaintiff states she believes requiring the faculty to be on campus is "a huge disservice to the community" and her belief that it would affect future donations to the university, the crux of Plaintiff's

10

email is her dissatisfaction with an internal employment policy and not an issue of public concern. *See Phares v. Gustafsson*, 856 F.2d 1003 (7ᵗʰ Cir. 1988)(the mere fact that the speech tangentially raises issues of public concern cannot transform a purely private personnel matter into a matter of public concern). We find that Plaintiff's email and subsequent discussion with Sanders regarding the policy was a criticism of a condition of employment, not of public concern. Accordingly, the Court finds that, as a matter of law, Plaintiff's speech does not relate to matters of public concern for the purposes of *Pickering* and, therefore, is not protected speech under the First Amendment. Plaintiff further contends that her filing of the EEOC charge and this lawsuit are protected speech entitled to First Amendment protection. The Court agrees, however, they may not serve as the basis for Plaintiff's First Amendment retaliation claim as they were not filed until after Sanders' recommendation and Stubblefield's decision that Plaintiff receive the ranking of Instructor rather than Assistant Professor. Accordingly, Plaintiff's First Amendment Retaliation claim is DISMISSED WITH PREJUDICE.

## Substantive Due Process

Defendants contend they are entitled to summary judgment on Plaintiff's substantive due process claim. However, this is not substantiated anywhere in Defendants' Motion or supporting

11

**AO72A**
**(Rev. 8/82)**

documents.    In  any  event,  Plaintiff  responds  that  her

substantive  due  process  rights  were  violated  as  the  decision  to

terminate  her  was  "arbitrary  and  capricious",  "without  a

rational  basis"  and  "made  in  bad  faith".    (Doc.  42,  pp.  53-54).

However,  Plaintiff's  tenured  public  employment,  while  a  property

interest,  is  not  so  "fundamental"  as  to  be  protected  by

substantive  due  process.    *See Singleton v. Cecil*,  176  F.3d  419

(8th  Cir.  1999);  *Nicholas v. Pennsylvania State Univ.*,  227  F.3d

133  (3rd  Cir.  2000).    Accordingly,  Defendants'  Motion  is  GRANTED

as  to  Plaintiff's  substantive  due  process  claim,  and  that  claim

is  DISMISSED  WITH  PREJUDICE.

## Procedural Due Process

Once  it  is  determined  that  some  process  is  required,  it

remains  to  be  determined  if  due  process  was  afforded.    *Cleveland*

*Bd. of Educ. v. Loudermill*,  470  U.S.  532  (1985).    Due  process

generally  requires  that  certain  procedures  be  met;  a  plaintiff

must  receive  adequate  notice  and  "'the  opportunity  to  be

heard'...  at  a  meaningful  time  and  in  a  meaningful  manner."

*Armstrong v. Manzo*,  380  U.S.  545  (1965)(citation  omitted).    The

requirements  of  procedural  due  process  are:  (1)  clear  and  actual

notice  of  the  reasons  for  termination  in  sufficient  detail  to

enable  him  or  her  to  present  evidence  relating  to  them;  (2)

notice  of  both  the  names  of  those  who  have  made  allegations

against  the  teacher  and  the  specific  nature  and  factual  basis

12

for the charges; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal. *See King v. Univ. of Minn*., 774 F.2d 224 (8th Cir. 1985).

Plaintiff contends that she was not provided specific information regarding what she allegedly plagiarized, that Defendants changed the charges without notice, prevented her from presenting certain evidence and allowed a biased Stubblefield to make the decision to terminate her. (Doc. 42, pp. 55-56). After a four-day hearing in which Plaintiff was represented by counsel, the Ad Hoc Committee found that Plaintiff committed plagiarism. Defendants also provided Plaintiff with a letter advising her that she was charged with falsifying a promotion application and plagiarism. (Doc. 32, Ex. H-6). Defendants further provided Plaintiff with a copy of the Employee Handbook and offered to make documents available at her request. (Doc. 32, Ex. H-8). It appears that the fundamental purposes of due process - notice and an opportunity to respond- were served. Accordingly, Plaintiff's procedural due process claim is DISMISSED WITH PREJUDICE.

## Conclusion

In conclusion, the Court determines Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Summary judgment as to Plaintiff's gender discrimination claims under

13

AO72A
(Rev. 8/82)

Title VII and the EPA and retaliation claim under Title VII is DENIED.  Summary judgment as to Plaintiff's First Amendment retaliation claim and substantive/procedural due process claims is GRANTED and those claims are DISMISSED WITH PREJUDICE.  As Plaintiff's remaining claims are asserted against UAFS only, Separate Defendants Joel Stubblefield and Sandi Sanders, in their official and individual capacities are DISMISSED as defendants in this case.  Accordingly, the hearing set for Thursday, July 27, 2006 at 3:00 p.m. is CANCELLED, and Plaintiff's Motion for Substitution of Parties (Doc. 49) is DENIED AS MOOT.

IT IS SO ORDERED this 26th day of July, 2006.


/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

14